IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CLIFF HYATT AND JEREMY HARDIN, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiffs, ) ) v. ) ) HILLER PLUMBING, HEATING AND ) COOLING CO. INC., ) ) Defendant. ) | CIVIL ACTION NO. 3:11-cv-1189 Judge Trauger |

**RULE 26(f) REPORT AND PROPOSED INITIAL CASE MANAGEMENT ORDER**

Pursuant to Rule 26(f) and Local Rule 16.01(d), the parties have met and conferred. As a result of that process, the parties propose the following Initial Case Management Plan:

1. **Jurisdiction:** As the Plaintiffs assert claims under the federal Fair Labor Standards Act ("FLSA"), this court has federal question jurisdiction.

2. **Service of Process:** Defendant has waived service of process.

3. **Responsive Pleadings:** Defendant filed its Answer on January 25, 2012.

4. **Plaintiff's Theory of the Case:**

Defendant employed plaintiffs and proposed class members (hereinafter Plaintiffs) as either HVAC technicians and/or Plumbing technicians. These individuals were paid hourly and do not fall under any exemption to the Fair Labor Standards Act. Plaintiffs were required to work a minimum of 40 hours a week.

Defendant required Plaintiffs to perform certain work each week "off the clock". Each of these hours should have been compensated at the proper overtime rate under the FLSA. This

practice also sometimes caused Plaintiffs to be paid less than the federally proscribed minimum wage. The "off the clock" work complained of by Plaintiffs falls into the following categories:

1.  *Ordering replacement parts*

Each day, Plaintiffs were required to order "replacement parts" for their trucks. Plaintiffs were required to do this "on their own time" and were not compensated for the time spent performing this work. This would take Plaintiffs a minimum of 2-3 hours each week to perform.

2.  *Working through mandatory lunch breaks*

Plaintiffs were automatically clocked out "one hour" each workday for a lunch break. Plaintiffs were rarely afforded an opportunity to take a lunch break being required to either skip lunch, or eat lunch during "travel time" between jobs.

3.  *Maintaining their work vehicles*

Defendant required Plaintiffs to clean and perform inventory on their work trucks once a month on their days off. This took anywhere from 3-4 hours to complete. Plaintiffs were not compensated for this time.

4.  *On call time*

The Defendant would call Plaintiffs on their days off and they were required to answer these calls. The calls regarded jobs previously performed as well as looking up data for their employers regarding parts and materials. This would amount to about 30 minutes per week.

In addition, Plaintiffs were subjected to illegal paycheck deductions such as "cleaning fees" for uniforms. The Defendant would also deduct from the Plaintiff's wages for equipment and/or tools missing from their truck inventory. These deductions would lead to Plaintiffs being paid less than minimum wage and/or proper overtime for certain work weeks.

The named Plaintiffs in this matter have actual knowledge the above listed practices are companywide. The proposed class members performed the same work as the named Plaintiffs and were unlawfully denied overtime pursuant to the FLSA. It is believed there are approximately sixty (60) technicians employed by Defendant currently.

5. **Defendant's Theory of the Case:** Defendant denies Plaintiffs' various claims. Each Plaintiff was properly paid for all time worked. Defendant denies that Plaintiffs can show a similarly situated class of individuals, so as to justify a collective action under the FLSA.

6. **Scope of Discovery:** The scope of discovery in this matter shall be governed by Federal Rule of Civil Procedure 26(b)(1). Neither party shall engage in discovery for purposes of harassment or for the purpose of increasing the burdens and costs of the other party.

7. **Other Claims:** At this time, the parties are not aware of the need for any additional counterclaims, cross-claims, third-party claims, joinder of parties or claims. Should the parties become aware of the need for such pleadings, then they will inform the other of the same.

8. **Amendment of Pleadings:** Any amendment to pleadings to add additional defendants must be filed not later than **June 15, 2012**. This deadline shall not restrict the joinder of opt-in plaintiffs; the Court's Order on conditional certification will provide further guidance on this issue.

9. **Initial Disclosures and Staging of Discovery:**

(a) **Initial Disclosures** – Rule 26(a)(1) Initial Disclosures shall be exchanged on or before **March 31, 2012**.

(b) **Completing Phase I of Discovery**: The parties propose that discovery be conducted in two phases. Issues relating to the conditional certification of Plaintiff's

purported Section 216(b) collective action would be resolved in the first phase (the "Phase I" period). Specifically, discovery in Phase I would focus on the allegations of Plaintiffs and whether and to what extent this matter should proceed as a Section 216(b) collective action. Discovery during Phase I will primarily consist of discovery related to whether conditional certification would be proper. The parties propose that Phase I discovery shall be completed by **May 30, 2012**.

If the matter is conditionally certified over Defendant's objection, the parties should then reconvene to address the timing and scope of discovery after the close of the notice period ("Phase II"). During Phase II of discovery, if necessary, the parties will conduct discovery regarding the merits of the collective action claims and alleged damages.

(c) **Plaintiffs' Motion for Conditional Certification:** Plaintiff shall move for conditional certification under the FLSA by **June 15, 2012**.

(d) **All Other Deadlines:** The parties are in agreement that the Court's ruling on Plaintiffs' motion for conditional certification will play a determining role on when the other deadlines in this case should be set. If that motion is denied, discovery can proceed in a timeframe that is typical of single-plaintiff litigation. If that motion is granted, the timeframe of discovery would likely depend on the scope of the collective action and how many individuals opt-in. The parties will submit a Second Joint Proposed Scheduling Order within **21 days** of the Court's Order on conditional certification.

(e) **Dispositive Motions Stay** – Discovery is not stayed while dispositive motions are pending, unless ordered by the Court.

(f) **Protective Orders** – Either party may file for a protective order should they have a good faith belief one is required. The parties will make a good faith effort to agree to terms of any parties' proposed protective order and file a joint motion for its approval prior to filing any Motion with the court regarding said protective order.

~~10.  **Subsequent Case Management Conference:** A subsequent telephonic case management conference shall be scheduled for **August 1, 2012** at ____:00.~~

11. **Alternate Dispute Resolution:** At this time, the parties do not believe alternate dispute resolution is appropriate. The parties will discuss the possibility of a settlement conference and request any such conference prior to the Subsequent Case Management Conference.

12. **Any Issues Related to the Disclosure or Discovery of Electronically Stored Information, Including the Form or Forms in Which it Should be Produced:**

(a) **General.** If Electronically Stored Information ("ESI") is a subject of discovery, it should be requested with as much specificity/particularity as possible to minimize the required expense. Based on the date this case was filed, the nature of the allegations, claims and defenses, and the applicable statute of limitations, the relevant time period for discovery should generally encompass December 16, 2008 to date subject to specific evidence suggesting that events outside this time frame are likely to lead to the discovery of admissible evidence.

(b) **Form of production.** Unless otherwise agreed upon, the parties may disclose/produce ESI in hardcopy or static form (*e.g.*, searchable .pdf or .TIF), thereby allowing documents produced to be indexed and individually marked through "bates" stamping. Consistent with Federal Rule of Civil Procedure 34(b)(2)(E)(iii), the parties

need not produce the same ESI in more than one form; however, after the production of ESI in a hardcopy or static form, the parties may request disclosure of metadata or native files for particular documents where good cause has been demonstrated (*e.g.*, when the original creation date of a document is at issue and disputed) or when a static image is not reasonably usable (*e.g.*, when a .pdf image is unable to capture/display all column/information contained in a spreadsheet such as an Excel file).

Consistent with Fed. R. Civ. P. 34(b), on-site inspections/testing of electronic media shall be permitted only where good cause for the same has been demonstrated. Absent a showing of good cause, neither party need produce ESI in its native form.

(c) **Search parameters/terms.** The parties agree that it is too early in the litigation to discuss the parameters of any search for potentially relevant ESI, but the parties agree to discuss search parameters, including keyword search terms, and will meet and confer to attempt to reach an agreement once written discovery is propounded that seeks potentially voluminous ESI.

(d) **Preservation of ESI.** The parties shall take reasonable steps to ensure that documents, ESI and other tangible objects that are subject to discovery are not destroyed, removed, mutilated, altered, concealed, deleted or otherwise disposed of.

Defendant has issued a litigation hold memo to various employees throughout the company. Defendant shall take reasonable measures to confirm that its employees are complying with the hold directive. The parties need not incur costs associated with making forensic copies ("mirroring") of hard drives, but the parties shall inform the other before any files are intentionally destroyed, removed, mutilated, altered, concealed,

deleted or otherwise disposed of and allow the other party to have the option to make said copies at their expense.

Plaintiffs have been notified of Defendant's intent to pursue discovery from personnel computing devices, so as to analyze the veracity of Plaintiffs' wage claims. Plaintiffs and Defendant's management have also agreed not to remove any ESI from any social networking site, such as Facebook. The parties has also agreed not to intentionally remove any ESI from any websites, internal network, computer servers, personal digital assistants, instant messaging, phone records or voicemail systems, or any other location relating to the activities complained of in Plaintiffs' Complaint.

The parties agree that perfection in preservation efforts is not required; instead, the parties have agreed to make a reasonable, good faith effort to preserve relevant information.

The fact that a particular document or tangible object may be included in the scope of the parties' agreement is not intended to, and does not, establish or suggest that the document is discoverable, relevant to, or admissible in this matter. By agreeing to preserve documents in accordance with the terms hereof, the parties do not waive any objection to the ultimate discoverability or admissibility of any such documents.

(e) The parties agree that the costs associated with discovery should be as reasonable as possible; neither party shall engaged in discovery efforts, the primary purpose of which are to simply drive up the other party's costs.

13. **Issues Related to Claims of Privilege and Inadvertent Production:** The parties have agreed to an order regarding claims of privilege or of protection as trial-preparation material asserted after production, as follows: If a producing party inadvertently or mistakenly

produces information, documents or tangible items that should have been withheld subject to a claim of attorney-client privilege or work product immunity, such production shall not prejudice such claim or otherwise constitute a waiver of any claim of attorney-client privilege or work product immunity for such information, provided that the producing party promptly makes a good-faith representation that such production was inadvertent or mistaken and takes prompt remedial action to withdraw the disclosure upon its discovery. Within five business days of receiving a written request to do so from the producing party, the receiving party shall return to the producing party any documents or tangible items that the producing party represents are covered by a claim of attorney-client privilege or work product immunity and were inadvertently or mistakenly produced. **Should the party make a claim of privilege of work product, they shall set out the basis for their claim it is in fact covered by the work product privilege to allow the non-disclosing party to dispute whether this privilege should apply.**

The receiving party shall also destroy all copies or summaries of, or notes relating to, any such inadvertently or mistakenly produced information; provided, however, that such an order shall not preclude the party returning such information from making a motion to compel production of the returned information on a basis other than a waiver because of its inadvertent production as part of a discovery production under this protective order. The producing party shall retain copies of all returned documents and tangible items for further disposition.

14. **Changes in the Limitations on Discovery Set by the Federal Rules of Civil Procedure:** Because of the nature of the claims, the parties presently propose no maximum number of depositions by either party. The parties reserve the right to readdress this issue later in the litigation, as the scope of this litigation becomes clearer. Each deposition shall be limited to 7 hours absent agreement of the parties or a court order.

It is so **ORDERED:**

_____
**THE HONORABLE ALETA TRAUGER**
**UNITED STATES DISTRICT JUDGE**